**UPDATED MARCH 18, 2020**



JOINT STATEMENT FROM ELECTED PROSECUTORS
ON COVID-19 AND ADDRESSING THE RIGHTS AND NEEDS OF THOSE IN CUSTODY
*March 2020*

COVID-19 has the world on high alert. In recognition that the coronavirus is spreading quickly among high concentrations of people in close proximity, schools are being shut down, conferences rescheduled, international travel is being restricted, and cruise ships -- the early incubators of the virus -- are being quarantined. Those measures are all sensible, but they also drive home how little attention is being paid to the millions of people in the most overcrowded conditions that are ripe for the spread of this contagious and deadly virus: the people behind bars in America's jails, prisons, and immigration detention centers.

There are 2.3 million adults and children locked up in the United States in various systems of confinement, including state and federal prisons, local jails, youth correctional facilities, and immigration detention centers. Far more cycle in and out of jail on a daily basis; there are 10.6 million jail admissions every year.

Our country's jail and prison populations have exploded over the last few decades, a result of people being prosecuted more often for less serious behavior; an increase in the severity of sentences imposed; and our cash-based pretrial detention system, which keeps hundreds of thousands of people in jail prior to any determination of guilt and merely because they can't afford to pay bail. Recently, immigration detention has reached record proportions, despite apprehensions at the border being far below historic highs. The result of these practices is overcrowded jail, prison and immigration detention facilities that force people together in close quarters without access to proper hygiene or medical care, sometimes living barracks-style in gyms or other open spaces, breathing the same recycled air for up to 23 hours per day. These conditions are fertile ground for the spread of a virus like COVID-19.

We, as elected prosecutors, have an obligation to protect the safety and wellbeing of *everyone* in our community, regardless of their race, ethnicity, or country of origin. Those obligations extend behind prison walls. And they require elected prosecutors to step up in this time of growing public health concerns to address the needs and rights of individuals in these facilities.

An outbreak of the coronavirus in these custodial facilities would not only move fast, it would potentially be catastrophic. According to the Center for Disease Control, the elderly and people with underlying medical conditions are more susceptible to falling severely ill with COVID-19. Both populations are, unfortunately, well represented among incarcerated people. People over the age of 55 make up the fastest growing demographic of those imprisoned. From 1999 to 2016, the number of people age 55 or older in state and federal prisons increased 280 percent and it is estimated that by 2030, there will be over 400,000 people in our prisons over the age of 50. Similarly, jails and prisons house disproportionately large numbers of people with chronic

illnesses and complex medical needs that many facilities are already ill-equipped to treat. And at least 57 ICE detention centers have already experienced outbreaks of infectious diseases like mumps that have presented challenging health issues.

If these facilities become breeding grounds for the coronavirus, it will not only impact those incarcerated, but our entire community. Jails and prisons cycle large numbers of people in and out of close, unsanitary quarters on a daily basis. Many people are arrested and booked into jail on the same day, while others are released within a short time back to their community. People leave immigration detention and return to communities in the US or to vulnerable refugee shelters and encampments along the border. All of these facilities rely on services and support from vendors and medical professionals, employ staff who come and go, and appropriately provide access for legal counsel and family members to visit. And people with severe conditions who need intensive medical treatment are often removed from these facilities to be treated in local hospitals.

Most states and localities recognize the present danger and are considering stopgap solutions, including temporary release for certain populations. Some have also instituted more extreme measures such as locking down jails. These ad hoc responses underscore the urgent need for the broader and long-overdue reforms we were elected to carry out and are deeply committed to -- advancing fairness and equity and addressing overincarceration.

To that end, we believe that the current crisis creates an even more pressing need for elected prosecutors, public health officials, and other leaders to work together to implement concrete steps in the near-term to dramatically reduce the number of incarcerated individuals and the threat of disastrous outbreaks. And we are equally committed to not eroding the rights and safety of those in custody, even as we take steps to address the current health crises. We also recognize that there is no singular "right" approach on how to handle what is a rapidly evolving situation and that the dynamics in each jurisdiction will vary. Nonetheless, we believe that the principles set forth below are vitally important ones to consider and to implement to the fullest extent possible.

**Achieving Reductions in Detention and Incarcerated Populations**

First and foremost, we urge local officials to stop admitting people to jail absent a serious risk to the physical safety of the community. Policymakers, prosecutors and criminal justice leaders should also take steps to dramatically reduce detention and the incarcerated population. To that end, we believe that elected prosecutors should work with public health officials and other leaders in their communities to implement and advocate for the following reforms:

- Adopt cite and release policies for offenses which pose no immediate physical threat to the community, including simple possession of controlled substances.
- Release all individuals who are being detained solely because they can't afford cash bail, unless they pose a serious risk to public safety.
- Reduce the prison population to minimize sharing of cells and ensure that there are sufficient medical quarantine beds, and enough staff, to promote the health and safety of staff, those incarcerated, and visitors.

- Identify and release the following people immediately, unless doing so would pose a serious risk to the physical safety of the community:
    - Individuals who are elderly;
    - Populations that the CDC has classified as vulnerable (those with asthma, cancer, heart disease, lung disease, and diabetes);
    - People in local jails who are within 6 months of completing their sentence; and
    - People incarcerated due to technical violations of probation and parole.
- Put in place procedures and advocate for reforms that enable past lengthy sentences to be revisited and support release for those individuals who can safely return to the community.

**Humane Conditions of Confinement**

For those who must remain incarcerated, every effort should be made to ensure they have access to good healthcare, as defined by public health officials, and that their basic human rights are being met. It is critical to balance the precautions necessary to protect against any spread of the virus with the constitutional rights of those in custody. To that end, government officials and criminal justice leaders should work together, and with corrections and public health officials, to:

- Eliminate medical co-pays for anyone in confinement;
- Maintain access to counsel and preserve family visitation rights as long as possible and with precautions (such as glass wall barriers) that can address concerns around the introduction and spread of the virus in correctional facilities;
- Make phone calls free and increase teleconferencing capacity and means to help people stay connected to family and counsel; and
- Ensure that containment measures do not result in the denial of due process (for instance, avoid postponing court appearances and trials when doing so would violate speedy trial guarantees and do not creating barriers that inhibit access to counsel).

**Protecting Immigrant Communities and Reducing Immigration Detention**

Additionally, the federal government should take the following actions to end the spread of COVID-19 among immigrant communities:

- Suspend new detentions of suspected non-citizens unless there are compelling public safety reasons that support the need for ongoing detention;
- Immediately release all people under the age of 21 in immigration detention unless there are compelling public safety reasons that support the need for ongoing detention; and
- Direct the Department of Homeland Security to honor the sensitive locations policy and not conduct immigration enforcement operations in or around hospitals or medical clinics.

**Health Care Measures and Protections for Confined Individuals**

Prosecutors should also work with public health, corrections, immigration and government leaders to:

3

- Avoid the use of widespread lock-downs or solitary confinement as a containment measure and implement more targeted quarantines to control the spread of infection;
- Educate people in custody and staff about the virus and the measures they can take to minimize their risk of contracting or spreading the virus;
- Implement a humane plan for housing of persons who are not released but who are sick. In particular, patients should receive medical care in a hospital, rather than in a detention or corrections facility -- where treatment and housing poses a risk to both the patient and detention staff;
- Encourage and direct detention and corrections employees to stay home, with pay, if they feel sick; and
- Provide free soap and CDC-recommended hand sanitizer, increased medical care, comprehensive sanitation and cleaning of facilities and other safety measures as recommended by the CDC for those who remain incarcerated or detained.

Finally, elected prosecutors must be leaders and collaborate with, and where helpful convene, public health experts and the officials responsible for detention and custodial facilities to ensure that all members of their community are protected and *no one* is forgotten. They should also work with these partners to release to the public the plans and procedures in place to address COVID-19 within jails, correctional facilities and detention centers.

Even after the urgent threat of the coronavirus subsides, these sensible and smart policies should remain. The United States is an international outlier in its rate of incarceration -- we put far too many people behind bars for far too long, and fail to provide adequate care to those we incarcerate. That's a humanitarian crisis with or without COVID-19. We need to make deflection and diversion the presumptive default to shrink our rate and length of incarceration. We need to stop criminalizing immigrants. And we need to address the underlying inequities, public health system inadequacies, and racial biases that bring far too many people into contact with the justice system.

We are facing a serious threat as a country, but it also presents a unique opportunity to come together and swiftly address these longstanding systemic problems. These reforms are long overdue and they will help make our entire country more just, safe, and healthy.

Signed,

**Diana Becton**, District Attorney, Contra Costa County, California

**Buta Biberaj**, Commonwealth's Attorney, Loudoun County, Virginia

**Chesa Boudin**, District Attorney, City and County of San Francisco, California

**John Choi**, County Attorney, Ramsey County, Minnesota

**David Clegg**, District Attorney, Ulster County, New York

**Shameca Collins**, District Attorney, Sixth Judicial District, Mississippi

**Scott Colom**, District Attorney, Sixteenth Judicial District, Mississippi

**John Creuzot**, District Attorney, Dallas County, Texas

**Satana Deberry**, District Attorney, Durham County, North Carolina

**Parisa Dehghani-Tafti**, Commonwealth's Attorney, Arlington County and the City of Falls Church, Virginia

**Michael Dougherty**, District Attorney, Twentieth Judicial District, Colorado

**Mark Dupree**, District Attorney, Wyandotte County, Kansas

**Kim Gardner**, Circuit Attorney, City of St. Louis, Missouri

**Sarah F. George**, State's Attorney, Chittenden County, Vermont

**Joe Gonzales**, District Attorney, Bexar County, Texas

**Eric Gonzalez**, District Attorney, Kings County, New York

**Mark Gonzalez**, District Attorney, Nueces County, Texas

**Andrea Harrington**, District Attorney, Berkshire County, Massachusetts

**Jim Hingeley**, Commonwealth's Attorney, Albemarle County, Virginia

**Natasha Irving**, District Attorney, Prosecutorial District Six, Maine

**Justin F. Kollar**, Prosecuting Attorney, County of Kauaʻi, Hawaiʻi

**Lawrence S. Krasner**, District Attorney, Philadelphia, Pennsylvania

**Stephanie Morales**, Commonwealth's Attorney, Portsmouth, Virginia

**Marilyn Mosby**, State's Attorney, Baltimore City, Maryland

**Karl Racine**, Attorney General, District of Columbia

**Rachael Rollins**, District Attorney, Suffolk County, Massachusetts

**Marian Ryan**, District Attorney, Middlesex County, Massachusetts

**Daniella Shorter**, District Attorney, Twenty-Second Judicial District, Mississippi

**Carol Siemon**, Prosecuting Attorney, Ingham County, Michigan

**David Soares**, District Attorney, Albany County, New York

**David Sullivan**, District Attorney, Northwestern District, Massachusetts

**Cyrus R. Vance**, District Attorney, New York County, New York

**Lynneice Washington**, District Attorney, Jefferson County, Bessemer Division, Alabama