[D.I. 9]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ANDREW DRECHSEL | Crim. No. 20-mj-1044 (AMD) |

**ORDER**

This matter is before the Court by way of motion of defendant Andrew Drechsel (hereinafter, "Defendant") for an order of release pursuant to 18 U.S.C. § 3142(f). Defendant is charged by way of criminal complaint dated July 31, 2020 with 1) use of interstate commerce to entice a minor to engage in sexual activity under 18 U.S.C. § 2422(b); 2) enticement to travel in interstate commerce with the intent to engage in illicit sexual conduct with a minor under 18 U.S.C. § 2422(a); 3) travel in interstate commerce with the intent to engage in illicit sexual conduct with a minor under 18 U.S.C. § 2423(b); and 4) manufacture of child pornography under 18 U.S.C. §§ 2251(a) and (e). Defendant was arrested in Florida on August 4, 2020 and appeared for his initial appearance that same day in the United States District Court, Middle District of Florida. (Rule 5 Documents [D.I. 5], Aug. 4, 2020.) At his initial appearance, the Middle District of Florida court entered

an order detaining Defendant. (*Id.*) On September 10, 2020, Defendant filed a motion for release from custody. (Letter from Christopher D. Adams, Esquire (hereinafter, "Def.'s Ltr.") [D.I. 9], Sept. 10, 2020.) This Court held an initial appearance via Zoom on September 11, 2020 and held a detention hearing at that time. (Minute Entry [D.I. 14], Sept. 11, 2020.) The Court continued the detention hearing via Zoom on September 17, 2020 and September 22, 2020. (Minute Entry [D.I. 19], Sept. 17, 2020; Minute Entry [D.I. 22], Sept. 22, 2020.) After considering the parties' arguments and filings, and for the reasons set forth on the record on September 22, 2020, the Court denied Defendant's request for bail and entered an Order of Detention Pending Trial [D.I. 21] on September 22, 2020.  This order formalizes the Court's ruling set forth in the September 22, 2020 bench opinion.

The Bail Reform Act, 18 U.S.C. §§ 3141-3156, governs the release or detention of a defendant pending criminal judicial proceedings. *See generally*, 18 U.S.C. § 3141(a) (noting that a judicial officer shall order an arrested person "released or detained" pending judicial proceedings). Under the Bail Reform Act, a court may release a defendant "on personal recognizance or upon execution of an unsecured appearance bond," subject "to the condition that the [defendant] not commit a Federal, State, or local crime during the period of release[,]" 18 U.S.C. §§ 3142(a)(1), (b), and may impose additional conditions to the extent

2

release "on personal recognizance" or "upon execution of an unsecured appearance bond" fails to "reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community[.]" 18 U.S.C. §§ 3142(b), (c). The Bail Reform Act requires that such conditions be "the least restrictive further condition, or combination of conditions, that [the court] determines will reasonably assure the appearance of the person as required *and the safety of any other person and the community*[.]" 18 U.S.C. § 3142(c)(1)(B) (emphasis added). If the Court determines that no condition or combination of conditions will "reasonably assure the appearance of the person as required" and assure "the safety of any other person or the community[,]" the Court must order the detention of the person before trial. *See* 18 U.S.C. § 3142(b).

In determining whether additional conditions exist "that will reasonably assure the appearance of the [Defendant] as required and the safety of any other person and the community," the Bail Reform Act directs the Court to evaluate four factors. 18 U.S.C. § 3142(g). Specifically, the Court considers: 1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence; 2) the weight of the evidence against the defendant; 3) the defendant's history and characteristics, including the defendant's "character, physical and mental condition, family ties, employment, financial

3

resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings" and whether the defendant was on probation, parole or pre-trial release at the time the offense occurred; and 4) the nature and seriousness of the danger that would be posed to any person or to the community in the event of the defendant's release pending trial. 18 U.S.C. §§ 3142(g)(1)-(4).

In this case, the Government moved for detention on the grounds of danger to the community and risk of flight.[1] Because Defendant is charged with violations of 18 U.S.C. §§ 2422, 2423, and 2251, which are classified as crimes of violence pursuant to 18 U.S.C. § 3156(a)(4)(C), the Government may move for pre-trial detention on the ground of dangerousness. *See* 18 U.S.C. § 3142(f)(1)(A). Further, the Bail Reform Act provides that certain offenses with a minor, such as those with which Defendant is charged here, give rise to a rebuttable presumption that "no condition or combination of conditions will reasonably assure the

---

[1] The Court found, for the reasons set forth on the record on September 11, 2020, that the proposed bail application rebutted the presumption of risk of flight and that the Government had not demonstrated by a preponderance of evidence that no condition or combination of conditions would reasonably assure the appearance of Defendant. In so ruling, the Court noted a search warrant of Defendant's home was executed in November 2019 and that there has been no assertion at the detention hearing that Defendant had since that time engaged in any activity to flee in an effort to avoid prosecution.

4

appearance of the person as required and the safety of the community[.]" 18 U.S.C. § 3142(e)(3)(E); *see also U.S. v. Schenberger*, 498 F. Supp. 2d 738, 741 (D.N.J. 2007). "Once the rebuttable presumption is established," the defendant bears the burden "to produce countervailing evidence that forms a basis for his contention that he will appear and will not pose a threat to the community." *Schenberger*, 498 F. Supp. 2d at 741 (citing *U.S. v. Carbone*, 793 F.2d 559, 560 (3d Cir. 1986)). "If the defendant meets this burden of production, the burden shifts back to the government to prove . . . dangerousness by clear and convincing evidence." *Id.* (citing *U.S. v. Perry*, 788 F.2d 100, 114-15 (3d Cir. 1986)). Here, there is no dispute that because the criminal complaint charges Defendant with a violation of 18 U.S.C. § 2422(b), there is a rebuttable presumption for detention in this case. (Def.'s Ltr. [D.I. 9], Sept. 10, 2020, p. 3.)

In his application for bail, Defendant proposes a number of restrictive conditions that he contends are "more than adequate to ensure [Defendant's] appearance at all future Court appearances and to protect the community." (*Id.* at p. 4.) These conditions include the following: Defendant has surrendered his passport to defense counsel; Defendant is to be placed on 24-hour lockdown at his home with electronic GPS monitoring, with a land line to be installed at his home for the purpose of location monitoring; appointment of three third-party custodians, including Defendant's

5

mother, girlfriend, and girlfriend's mother; Defendant will have no access to the internet or internet-accessible devices other than for purposes of communicating with counsel and/or the Court; Defendant will have no contact with the victim; Defendant will agree to substance abuse testing and/or treatment; and Defendant's compliance is to be secured with a $250,000 bond. (*Id.* at pp. 1-2.)

The Government, in support of its request for detention, points to the nature and circumstances of the offenses with which Defendant is charged, arguing that "[t]hough the mere receipt of child pornography is dangerous and encourages illicit activity, the defendant here is charged with an even more insidious crime, that of producing child pornography . . . by coercing and manipulating a minor[.]" (Letter from Alisa Shver, Assistant United States Attorney [D.I. 10], Sept. 11, 2020, p. 4.) The Government notes that Defendant's notoriety gave him access to potential victims, and he "used his position in [American Ninja Warrior] competitions" to "surround himself with minor young girls who idolized him." (*Id.* at pp. 4-5.)[2] The Government also notes that Defendant knew the victim was fifteen years old when he began to engage in sexual activity with her and continued this behavior

---

[2] Defendant asserts that he previously competed in and won the American Ninja Warrior competition in 2016, 2018 and 2019. (Def.'s Ltr. [D.I. 9], Sept. 10, 2020, p. 5.)

for years "[u]nbeknownst to his 'partner in life' as well as his friends[.]" (*Id.*) The Government argues that there is "no realistic way" to prevent Defendant from accessing the internet to contact other potential victims and that the proposed third-party custodians are inadequate because Defendant "was apparently able to deceive [his girlfriend] on a daily basis, for years, with no repercussions" and was "sophisticated enough to know how to communicate with [the victim] without leaving an obvious electronic trail[,]" noting in particular that Defendant hid his communications in an encrypted and secret phone application. (*Id.* at 5.)

During the hearing on September 17, 2020, all three of the proposed third-party custodians testified and indicated at least one custodian would be present with Defendant twenty-four hours a day. Defendant's girlfriend, who resides with Defendant and is the mother of Defendant's son, also testified that she purchased a safe for the home in which she placed all internet-accessible devices, and only she has access to the code for the safe.[3] All three custodians testified that they would reside with

---

[3] Defendant's counsel similarly represented to the Court in a letter dated September 11, 2020 that the proposed third-party custodians purchased a safe to keep all electronics out of reach of Defendant, and that they placed Defendant's personal phone, work phone, tablet, laptop, and Xbox controller with the power cord, as well as Defendant's girlfriend's phone and laptop and their son's iPad, in the safe. (Letter from Christopher D. Adams, Esquire [D.I. 11], Sept. 11, 2020, p. 2.) Defense counsel further

7

Defendant and report to the appropriate authority if Defendant violated any of the conditions of release, including leaving the house or using a device to access the internet.

Defendant argues that the factors articulated in 18 U.S.C. § 3142(g) support release pending trial. Defendant notes in this regard that this is his first involvement with the judicial system, he is physically and mentally sound, has strong family ties to his mother, brother, and sister and lives with his "partner in life for the past nearly 10 years" and their son. (Def.'s Ltr. [D.I. 9], pp. 4-5.) Defendant further asserts that he is financially secure, has no history of drug or alcohol abuse, was not on probation, parole or any other release pending trial at the time of the alleged conduct or arrest, and knew of the investigation long before the charges were unsealed but has proven that he is willing to appear at court proceedings. (*Id.* at p. 5.)[4]

---

represented that the wi-fi password for the residence was changed and would not be shared with Defendant. (*Id.*)

[4] Defendant also argues that pre-trial detention places Defendant at "significantly greater risk of contracting COVID-19" and at a "greater risk of serious illness or death[.]" (Def.'s Ltr. [D.I. 9], Sept. 10, 2020, p. 6.) Defense counsel conceded at the detention hearing, however, that Defendant does not have a health condition that makes him particularly susceptible to contracting COVID-19. In the bench opinion, the Court rejected Defendant's request for release on these grounds. *See U.S. v. Garrett*, 19-cr-350, 2020 WL 2219828, at *1 (D.N.J. May 7, 2020) (denying defendant's motion for pretrial release, noting that defendant's assertion "that COVID-19 alone justifies release" is "contrary to relevant precedent")(citing *U.S. v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020)).

8

In considering whether bail or detention is warranted, the Court first considers the nature and circumstances of the crime charged. In this case, Defendant is charged in a four-count criminal complaint. The allegations in the criminal complaint are set forth in detail by way of Affidavit of Rebecca Quinn, Special Agent with the Federal Bureau of Investigation (hereafter, "FBI"), annexed to the criminal complaint. According to the affidavit, on June 23, 2019, a 19 year-old female made a complaint to the Cherry Hill Police Department in Cherry Hill, New Jersey indicating that she had a sexual relationship with Defendant beginning when she was 15 years old and Defendant was 26 years old. (Criminal Compl. D.I. 1], Attachment B, p. 1, ¶ 3.) The affidavit states that Defendant met the victim in 2014 "after an event attended by numerous contestants in the television program, 'American Ninja Warrior[,]'" at which time they exchanged telephone numbers and began communicating with one another via text message. (*Id.* at p. 2, ¶ 6.) The affidavit provides that in July 2015, Defendant and the victim exchanged a text message conversation regarding the victim's upcoming visit to Defendant's gym in Hamden, Connecticut as a present for the victim's fifteenth birthday. (*Id.* at p. 2, ¶¶ 7-8.) Further, the affidavit states that during the text exchange, Defendant and the victim described plans for sexual activity. (*Id.* at p. 2, ¶ 7.) The affidavit states that the victim then traveled to Defendant's gym in Connecticut, and Defendant and the victim

9

engaged in sexual activity after Defendant's girlfriend left the property. (*Id.* at pp. 2-3, ¶ 8.) According to the affidavit, Defendant and the victim thereafter exchanged text messages in which they discussed having sexual relations again, and in January 2016 Defendant traveled from Connecticut to New Jersey and met the victim for another sexual encounter. (*Id.* at pp. 3-4, ¶¶ 10-11.) The affidavit states that the victim was still fifteen years old at that time. (*Id.* at p. 3, ¶ 11.) In addition, according to the affidavit, the victim told police that she and Defendant met multiple times at a gym in Hainesport, New Jersey, where they engaged in sexual activity outside of the building when the victim was still a minor. (*Id.* at p. 4, ¶ 11.) Further, as set forth in the affidavit, Defendant allegedly communicated with the victim in Skype sessions, beginning when the victim was fifteen years old, and told the victim to perform sexual acts. (*Id.* at pp. 4-5, ¶¶ 14-16.) The affidavit provides that when law enforcement agents executed a search warrant at Defendant's residence in Connecticut in November 2019, they recovered a cell phone that Defendant identified as his "old phone." (*Id.* at p. 5, ¶ 17.) According to the affidavit, forensic analysis of the cell phone revealed images and a video of the victim, when she was fifteen years old, engaging

10

in "lascivious exhibition of her genitals and masturbation." (*Id.* at pp. 5-6, ¶ 19.)[5]

The Court finds that the first factor under 18 U.S.C. § 3142(g) weighs in favor of detention. In this case, the charged offenses entail the sexual exploitation of a minor and involve illegal sexual contact and production of child pornography. The alleged contact spanned at least two years and the complaint includes allegations that Defendant was aware that the victim was a minor. Indeed, the Government asserts that the minor victim held her fifteenth birthday party at Defendant's gym in or about July 2015[6] and Defendant engaged in sexual contact with the victim on that day. Further, as averred in the affidavit, the victim told her mother about the incident the following day, and her mother then confronted Defendant and told him that the victim had just

---

[5] According to the affidavit, the files were located in an application called Vault-Hide, which is described as "a 'cell phone application that allows the user to hide text messages, photos and videos. It provides years of professional mobile security services to ensure the most reliable personal privacy protection.'" (Criminal Compl. [D.I. 1], Attachment B, at p. 6, ¶ 19 n.5.) The affidavit also indicates that Defendant attempted to avoid detection of his relationship with the victim by asking the victim to delete text messages and communicate only through wi-fi rather than through cellular service. (*Id.* at pp. 3-4, ¶¶ 11, 13.)

[6] Although the affidavit does not state the exact date of the birthday party, it states that Defendant and the victim exchanged a text message conversation on July 6, 2015 about her "upcoming" visit to Defendant's gym, and on August 9, 2015 they purportedly exchanged another text message conversation about having sexual relations again. (Criminal Compl. [D.I. 1], Attachment B, pp. 2-3, ¶¶ 7, 8, 10.)

turned fifteen years old. (Criminal Compl. [D.I. 1], Attachment B, p. 3 ¶¶ 8-9.) Nonetheless, according to the affidavit, Defendant engaged in sexual contact with the victim again in January 2016. (*Id.* at p. 3-4, ¶¶ 11-12.) Further, the alleged illegal conduct was repetitive and occurred in multiple places, including at Defendant's home when Defendant's partner was in the house, and sets forth Defendant's alleged manipulative behavior insofar as Defendant sought to conceal the illegal activity by asking the minor victim to delete the text messages between them and only communicate via wi-fi, and by Defendant storing pornographic images and a video of the victim in a hidden application on his cell phone. Consequently, this factor weighs strongly in support of detention.

   The weight of the evidence also supports detention. The criminal complaint contains detailed allegations, as contained in a seven-page affidavit from an FBI Special Agent. The affidavit, which is based on the Special Agent's investigation and information provided by other law enforcement officers, contains a detailed account of Defendant's contact with the minor victim, including a statement made by the minor victim to law enforcement, and sets forth a description of multiple lascivious images of the minor victim obtained from a forensic analysis of Defendant's cell phone. In light of these detailed allegations, the Court finds that the weight of the evidence is substantial and supports detention.

The third factor for the Court's consideration is the history and characteristics of the defendant. Defendant has no criminal history, is physically and mentally sound, and has strong family ties. These factors all support bail. He also lives with his life partner and their son, is financially secure, and has no history of drug or alcohol abuse, which factors also weigh in favor of bail. Defendant was not on probation, parole or any other release pending trial at the time of the alleged conduct or arrest, and has proven that he is willing to appear at court proceedings. These factors further support Defendant's request for bail. However, the detailed affidavit sets forth manipulative conduct of Defendant by averring that he is willing and able to deceive his family and friends, having engaged in illegal conduct over several years including while his girlfriend was physically present in the home, and taken measures to conceal his activity, including hiding lascivious images in an encrypted format on his cell phone and asking the victim to delete text message conversations and only communicate via wi-fi. *See Schenberger*, 498 F. Supp. 2d at 744 (finding that defendant police officer "betrayed his oath of office and the trust placed in him by his family, employer and the community at large" and that "[i]f defendant betrayed this trust, no assurances can be given that he would not also violate any condition of release this [c]ourt imposed, no matter how stringent").

The fourth factor for the Court's consideration is the nature and seriousness of the danger that would be posed to any person or the community if the defendant is released. Defendant has proposed very restrictive conditions in the bail package; however, the Court finds that Defendant has not overcome the presumption of detention on dangerousness grounds. The Court finds *U.S. v. Petersen*, Case No. 17-cr-00259-CRB-1/JD, 2017 WL 2179591, at *1 (N.D. Cal. May 17, 2017) instructive on this issue. In *Petersen*, the defendant was charged with possession of child pornography, and the Government argued there was probable cause to believe the defendant also produced and distributed child pornography. *Id.* at *2. The magistrate judge ordered the pre-trial release of the defendant, and the Government appealed the decision. *Id.* at *1. The district judge concluded that the factors in section 18 U.S.C. § 3142(g) supported pre-trial detention. *Id.* at *4. In particular, the court noted:

> Petersen's modus operandi was to induce trust and betray it. Petersen's commitment to that tactic, and his success with it, raise insurmountable concerns that he cannot be trusted to adhere to conditions restricting his behavior. The fact that the conduct underlying the charge against him occurred while he lived in his father's home substantially undercuts any assurance that might be derived from his father's offer to be a full-time custodian. Aggravating these concerns is the undisputed fact that Petersen is adept and skillful in using the internet and other technology. Several courts have recognized the virtual impossibility of

14

>     controlling access to the internet and other
>     technologies in circumstances like this.

*U.S. v. Petersen*, 2017 WL 2179591, at *4.

Here, Defendant has offered three third-party custodians who represent that they will monitor Defendant twenty-four hours each day. However, the Court finds that, in light of the nature and circumstances of the crimes charged, Defendant "cannot be trusted" to adhere to any bail conditions. *See Petersen*, 2017 WL 2179591, at *4. Defendant is alleged to have conducted the illegal contact with the minor over a lengthy period of time and, as noted *supra*, he was living with his girlfriend at the time of the alleged conduct giving rise to the instant charges and some of the illegal conduct at issue occurred while Defendant's girlfriend was physically present in the home. These allegations undercut the argument that Defendant's girlfriend, her mother, and his mother can provide adequate assurances that Defendant will comply with the bail conditions. Indeed, as noted by the Government, the allegations demonstrate that Defendant's partner either turned a blind eye to Defendant's alleged conduct, or that Defendant has an ability to repeatedly deceive the proposed custodian. *See, e.g., U.S. v. Carey*, Crim. No. 1:18-CR-263, 2020 WL 2084985, at *7 (M.D. Pa. Apr. 30, 2020) (rejecting defendant's mother as third-party custodian where defendant's "willingness to engage in drug trafficking from his mother's home without her knowledge strongly

suggests that he would not be amenable to bail supervision by this proposed third-party custodian"). The Court also finds that the other proposed third-party custodians are family members, namely, Defendant's mother and his girlfriend's mother, and these proposed third-party custodians are not sufficiently independent that they would be able to supervise Defendant given the nature of the crimes charged and the allegations of Defendant's conduct, including his use of software to hide messages. *See U.S. v. Vargas*, Mag. No. 13-2044, 2013 WL 3223419, at *5 (D.N.J. June 25, 2013) (court declined to accept defendant's mother as third-party custodian "given her close relationship to defendant").

The Court also notes that Defendant's bail package includes having all internet-accessible electronic devices placed in a safe and that the third-party custodians have the only access. However, given the allegations concerning Defendant's ability to conceal his illegal internet activity through the use of a hidden application on his cell phone, which activity was only uncovered through forensic analysis of the phone, and Defendant's skill in hiding criminal activity from his family and friends over many years, the Court is not convinced that any measures can assure that Defendant would be precluded from accessing the internet if released to the third-party custodians. *See U.S. v. Conover*, Mag. No. 12-2080, 2012 WL 4846132, at *7 (D.N.J. Oct. 10, 2012),

("Although defendant will agree not to use or access a computer, this condition of release is difficult to enforce.").

In consideration of all of the factors, the Court finds that Defendant's lack of criminal history and the other characteristics argued by Defendant in support of bail are significantly outweighed by the nature and circumstances of the crimes charged, the detailed allegations of the criminal complaint, the considerable weight of the evidence and the danger to the community if Defendant is released.[7] The Court finds that

---

[7] The Court notes that the Government made a number of proffers during the hearings in this matter concerning additional illegal conduct by Defendant involving two other minors. According to the Government, one victim was fifteen years old when Defendant was 23 years old and Defendant allegedly met the victim at the gym, had sexual relations with the minor and called her his secret girlfriend. The Government further proffered that the second victim was sixteen years old when Defendant, who was 25 years old, lured the victim to communicate with him, meet him in person and engage in sexual relations in 2017. The Government also proffered that Defendant solicited the minor to produce and send child pornography images to Defendant via text messages and Snapchat. The Government further proffered that there is an allegation of forcible rape that was made to the police by Defendant's girlfriend's friend. Defendant challenged the Government's proffers, arguing that the Government's proffers were insufficient to meet the Government's burden of producing clear and convincing evidence of dangerousness. (Def.'s Letter [D.I. 16], Sept. 17, 2020)(citing *U.S. v. Robinson*, 820 F. Supp. 2d 146 (D. Mass. 2011)). This Court notes that under Third Circuit law, the Government may proceed by way of proffer at a detention hearing. *See U.S. v. Delker*, 757 F.2d 1390, 1396 (3d Cir. 1985) ("[W]e believe that discretion lies with the district court to accept evidence by live testimony or proffer."); *see also* 18 U.S.C. § 3142(f)(2) ("The rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the hearing."). However, in this case, the proffers did not include any specific dates or locations. The Court

Defendant has not rebutted the presumption that no condition or combination of conditions will reasonably assure the safety of the community. In addition, even if Defendant has rebutted the presumption, the Court finds that the Government has proved by clear and convincing evidence that no condition or combination of conditions exist that will reasonably assure the safety of the community if Defendant is released. Consequently, for the reasons set forth herein and for the reasons set forth on the record on September 22, 2020, and for good cause shown:

IT IS on this **1st** day of **October 2020**,

**ORDERED** that Defendant's motion for bail [D.I. 9] shall be, and is hereby, **DENIED**.

s/ Ann Marie Donio
ANN MARIE DONIO
UNITED STATES MAGISTRATE JUDGE

---

need not determine whether the proffers in the form in which they were made by the Government constitute sufficiently clear and convincing evidence to warrant detention, because detention is warranted without consideration of the proffers for the reasons set forth in the bench opinion and this order.