

**U.S. Department of Justice**
*United States Attorney*
*District of New Jersey*

---

*PHILIP R. SELLINGER*
*United States Attorney*

*401 Market Street, Fourth Floor*
*Camden, New Jersey 08101-2098*

*SARA A. ALIABADI*
*Assistant United States Attorney*

March 29, 2024

<u>Via ECF</u>

Hon. Joseph H. Rodriguez
United States District Judge
District of New Jersey
Mitchell H. Cohen Courthouse
4th & Cooper Streets
Camden, New Jersey 08101

> Re: <u>United States v. Andrew Drechsel, 23-cr-410 (JHR)</u>
>
> **The Government's Unopposed Motion to Use a Crisis Response Canine and a Canine Handler at Sentencing**

Dear Judge Rodriguez,

On June 1, 2023, defendant Andrew Drechsel pleaded guilty to a two-count information charging him with receipt of child pornography, in violation of 18 U.S.C. § 2252A(a)(2)(A) and (b)(1), and enticement to travel with the intent to engage in illicit sexual contact, in violation of Title 18 U.S.C. § 2422(a). The charges relate to the defendant's illegal, sexual relationship with a female victim ("Victim-1"), which began when Victim-1 was an adolescent girl.[1]

After multiple continuances, the sentencing hearing now is scheduled for April 16, 2024, and Victim-1 may attend and seek to speak at the hearing. Additional victims of the defendant's illegal conduct, as described in the Presentence Report, also may attend and seek to speak. For the reasons set forth below, the Government now seeks a court order permitting the use of a certified crisis response canine at the sentencing hearing. The canine may assist Victim-1 with Victim-1's anxiety during the sentencing hearing and also may assist any other victims who may seek to attend the sentencing hearing.

The defense does not oppose the Government's motion.

---

[1]     The disturbing facts and circumstances of the defendant's crimes are described in great detail in the Presentence Report, to which the Court and the parties have full access, and will not be recounted here.

I.     Legal Standard

The 2004 Crime Victim Rights Act (CVRA) gives federal crime victims "the right to be treated with fairness and with respect for the victim's dignity and privacy." 18 U.S.C. § 3771(a)(8). Furthermore, the CVRA makes it clear that these rights are not simply symbolic, but rather are enforceable by use of a writ of mandamus in district court. 18 U.S.C. § 3771(d)(3). Several courts have held that the rights under the CVRA are meaningful and enforceable in many contexts. *United States v. Patkar*, Cr. No. 06-00250, 2008 WL 233062, at *6 (D. Hawaii 2008) (holding that the CVRA "was intended to provide meaningful rights, and not a simple laundry list of aspirational goals as to how the government and courts should treat victims"); *see also United States v. Heaton*, 458 F. Supp. 2d 1271, 1272 (D. Utah 2006) (holding that § 3771(a)(8) requires a court to consider the views of a victim before dismissing an indictment pursuant to Fed. R. Crim. P. 48(a)); *United States v. Turner*, 367 F. Supp. 2d 319, 335 (E.D.N.Y. 2005) (stating that the import of 18 U.S.C. § 3771(a)(8) is "to promote a liberal reading of the statute in favor of interpretations that promote victims' interests in fairness, respect, and dignity.").

Victims who speak in court about a traumatic event can benefit from the presence of an appropriately-trained dog in the courthouse. "Participating in courtroom or other legal proceedings is arguably one of the most stressful events that most people experience. It is clear that the presence of an appropriately bred and trained dog can significantly reduce the anxiety associated with these experiences, thereby improving the efficiency and quality of the legal process." James C. Ha, PhD, CAAB; *see* https://courthousedogs.org/legal/dogs-reduce-stress.  Research shows that human-animal interactions can have both psychological and physiological benefits. As one district court stated, "Therapy dogs may aid sexual assault victims. Benefits include decreased anxiety, reduced blood pressure, lower heart rate, decrease in depression, increased speech and memory functions, and heightened mental clarity. The use of therapy dogs in court is an emerging area of the law and one that has garnered academic attention." *United States v. Jackson*, No. 3:20-CR-76 DRL-MGG, 2021 WL 1570613, at *7 (N.D. Ind. Apr. 22, 2021) (internal citations omitted).

II.     Analysis

In this case, the Government's request for a crisis response canine is unopposed by the defense. If the Court grants the Government's request, the Government will seek to have Melody L. Tiddle, trained FBI canine handler, and Tiddle's courthouse facility dog, Gio, join the prosecution team. Tiddle is employed as a victim assistance rapid deployment team analyst in the FBI Office for Victim Assistance (OVA), in Washington, D.C. Gio is a crisis response canine, also known as a courthouse facility dog.[2] He was trained as a facility dog by Assistance Dogs of the West (ADW). ADW is an .

---

[2]     Gio's official title is "Crisis Response Canine," but he is also sometimes referred to as a "Courthouse Facility Dog." Courthouse Facility Dogs "are professionally trained dogs working throughout the country in prosecutor's offices, child advocacy centers, and family courts. They primarily provide a calming influence for children during stressful legal proceedings." *See* https://courthousedogs.org/. As a Crisis Response Canine, Gio also works outside the courthouse environment, including by responding to mass casualty events. Throughout this motion the Government used the phrases "Crisis Response Canine" and "Courthouse Facility Dog" interchangeably.

assistance dog organization established in 1995 that is accredited by Assistance Dogs International (ADI).

ADW trains dogs for multiple purposes, including as service dogs (primarily for mobility assistance); medical alert dogs; skilled support dogs for combat injuries; PTSD support dogs; traumatic brain injury and other physical and emotional disability support dogs, as well as dogs for facility teams. Facility teams are made up of the dog and a dog handler, who is also trained by the training organization. Facility dogs carry most of the skills of service dogs, especially public access training, socialization, as well as specialized skills for whatever type of facility the dog will be working in. Since 2010, ADW has placed dogs in criminal justice and family court settings, district attorney's offices, child advocacy centers, and with court-appointed special advocates (CASAs).

Tiddle's dog, Gio, was trained for almost two years prior to placement and knows more than 90 cues. ADW determined that his temperament was best suited to work in a public setting and placed him at the FBI OVA to work as a facility dog. He responds to national mass casualties as a member of the Victim Services Response Team and typically works with vulnerable victims in the Washington, D.C. area (including D.C., Maryland, Virginia and Pennsylvania). Gio's greatest strength is his ability to calm and comfort others in stressful situations. He is owned and fully insured by the FBI. After Gio's training, Tiddle and Gio passed a public access test that is identical to the one required for service dogs. The public access test ensures the facility dog is "stable, well-behaved, and unobtrusive to the public." Additionally, ADI requires that assistance dogs meet standards of appearance and behavior in public. *See* www.assistancedogsinternational.org/standards/assistance-dogs/assistance-dogs-in-public. Gio has successfully worked as a facility dog at several recent deployments, and has provided support to vulnerable victims during forensic interviews, briefings, special operations, and—most relevant for this case—during sentencing and delivery of a victim impact statement.

If authorized to be present during the sentencing hearing in this case, Tiddle and Gio will travel to the Camden, New Jersey area prior to the hearing, enter the federal courthouse, provide services to Victim-1 and any other victims that may need them during the hearing, and then leave the courthouse shortly thereafter. When accompanying a witness or a victim, Gio generally lies quietly at the witness's or victim's feet and is trained to not disturb the proceeding. The Government expects that Gio's presence at the sentencing hearing in this case would provide great comfort for Victim-1, as well as any other victims who may choose to attend and speak, and would help to minimize the interruptions and avoid the need for numerous breaks during the testimony.

While dogs are generally not allowed in federal buildings, see CFR § 102-74.425, there is substantial precedent on which this Court can rely in allowing crisis response canine, Gio, to enter and remain in the courthouse building on the day of the sentencing hearing in this case. Courthouses and child advocacy centers across the country use therapy dog programs to provide victims emotional support through trial. Canines in the Courtroom, GPSolo, July/August 2009, at 54-56. Furthermore, the United States Marshal Service (USMS) was consulted prior to the filing of this request with the Court. The Supervisory United States Marshal in Camden, Michael Lewandowski, represented to the undersigned that his agency has no objection to the use and presence of Gio in the courthouse on the date of the sentencing in this case.

Notably, numerous courts across the country have authorized the use of assistance dogs in trials and other hearings. The Michigan Court of Appeals specifically held that a Therapy Dogs International therapy dog could accompany a sexual assault victim while she testified. *People v. Johnson*, 2016 Mich. App. Lexis 781, *10, n.2 (April 19, 2016) (citing with approval other jurisdictions to allow the use of a canine support animal to accompany witnesses at trial). In *People v. Tohom*, 109 A.D.3d 253, 969 N.Y.S.2d 123 (2013), a state appellate court in New York ruled:

> '[Dogs] are such agreeable friends—they ask no questions, they pass no criticisms' (George Eliot, Scenes of Clerical Life [1857]), but do they belong in the courtroom? On this appeal, we examine the question of whether the courts of this state should permit the presence of a therapeutic "comfort dog" in a trial setting when the court determines that the animal may provide emotional support for a testifying crime victim. We conclude that this question should be answered in the affirmative.

109 A.D.3d at 255. In *Tohom,* the trial court found that a 15-year-old victim's testimony was likely to cause her severe stress and allowed a therapy dog to accompany her during her testimony. Id. at 269. In *State v. Jacobs*, 2015 WL 6180908 (2015), the Ohio Court of Appeals upheld the trial court's decision to allow a 17-year-old (aged 11-15 at the time of the alleged offenses) to have a therapy dog sit at her feet while she testified.

Other courts have also upheld the use of therapy dogs to support victims of sexual assault. *State v. Devon D.*, 321 Conn. 656 (2016) (upholding trial court's decision to allow dog to sit near victim's feet during trial testimony about sexual assault, finding that correct standard was whether the "special procedure . . . will aid the witness in testifying truthfully and reliably"); *see also State v. Jacobs*, Case No. 27545, 2015 WL 6180908, at *6 (Ohio Ct. App. Oct. 21, 2015) (finding no abuse of discretion in allowing dog to accompany 17 year-old victim during testimony); *State v. Hasenyager*, 67 N.E.3d 132, 134 (Ohio Ct. App. June 22, 2016) (finding no abuse of discretion in allowing use of facility dog during 13 year-old victim's testimony); *State v. Reyes*, 505 S.W.3d 890, 895 (Tenn. Crim. App. 2016) (finding no abuse of discretion in allowing use of dog to aid ten year-old sexual assault victim); *People v. Chenault*, 175 Cal. Rptr. 3d 1, 6 (Cal. Ct. App. 2014); *State v. Dye*, 309 P.3d 1192, 1196 (Wash. 2013); *People v. Johnson*, 889 N.W.2d 513, 524 (Mich. Ct. App. (2016) (finding that use of a support animal was more neutral than use of a support person in aiding six year-old victim); *Smith v. State*, 491 S.W.3d 864, 874 (Tex. App. 2016); *State v. Millis*, 242 Ariz. 33, 42, 91 P.3d 1225, 1234 (Ariz. Ct. App. 2017) (allowing dog to sit next to victim in courtroom gallery). Indeed, the use of a facility dog during state court proceedings is permitted by statute and court policy in at least 20 states. *See http://www.animallaw.info/content/facility-dogscourthouse-support-dogs.*

There is no federal equivalent to the state statutes, but this is a rapidly evolving issue of law. Several federal district courts have allowed the use of a facility dog to assist victims at trial either by being in the courthouse during trial in a separate room or at the witness stand during the victim's testimony. *See United States v. Rick Lee Evans*, 1:14-cr-333-AKK-JEO (U.S. District Court for the Northern District of Alabama, 2016) (aggravated sexual assault case involving a 12 year old victim where the court allowed for an animal-assisted therapy dog in the witness room of the courthouse during trial); *United States v. Martin Renteria*, 7:20-cr-355-DC, (U.S. District Court for the Western District of Texas, 2021) (sexual assault and production of child pornography case involving a 16 year old victim and a 12 year old victim where the court allowed a facility dog at the witness stand during the victim's testimony); *United States v. Rayevon Deschambault*, 2:19-cr-187-JAW (U.S. District Court of Maine, 2023) (production of child pornography involving an 18 year old victim where the

court allowed a facility dog in the courthouse in a conference room during the trial); *United States v. Jeffrey M. West*, 2:19-cr-20060-MMM-EIL (U.S. District Court for the Central District of Illinois, 2020) (production of child pornography involving an 11-year-old victim where the court allowed a facility dog in the courthouse in a separate room during the trial); *see also United States v. Wayne Joseph Cavins*, 3:21-cr-23-TJC-MCR (U.S. District Court, Middle District of Florida, Jacksonville Division, 2023) (comfort dog allowed in courthouse witness room before and after a sentencing hearing, where defendant was charged with enticement of a minor to produce child pornography, enticement of a minor to engage in sexual activity, and possession of child pornography).[3]

Victim-1 has never had to speak openly in any courtroom, and the Government anticipates that the sentencing hearing will be an extremely stressful event for Victim-1. Gio's presence will assist Victim-1, as well as any other victims who attend the sentencing hearing, by helping to decrease both anxiety and fear. Allowing a crisis response canine to accompany and assist Victim-1 at sentencing (and any other victims who may attend) is a reasonable accommodation that carries very little risk and will likely make speaking in open court less traumatic.

III.    <u>Conclusion</u>

For the reasons set forth above, the Government respectfully requests that the Court grant the Government's unopposed letter motion to use the certified crisis response canine, Gio, together with Gio's trained FBI handler, at the sentencing hearing in the above-captioned matter.

Respectfully submitted,

PHILIP R. SELLINGER
United States Attorney

By:  Sara A. Aliabadi
Assistant U.S. Attorney
District of New Jersey

cc:    Christopher Adams, Esquire (by ECF)
       Danielle K. Vargas, U.S. Pretrial Service Officer (by ECF)

---

[3]    While the Government is not aware of any previous instances in the District of New Jersey where a party has actually used a facility dog to assist a victim at a court hearing, the Government recently requested a facility dog for use at trial in *United States v. Williams,* Criminal Docket No. 22-cr-325 (CPO), and is awaiting the Court's ruling.